J-S37018-17, S37019-17, S37020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.S.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.C. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 62 MDA 2017 |

Appeal from the Order Entered December 7, 2016
In the Court of Common Pleas of Tioga County
Orphans' Court at No(s):  54 OC 2016

| | | |
|---|---|---|
| IN RE: S.J.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.C. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 63 MDA 2017 |

Appeal from the Order Entered December 2, 2016
In the Court of Common Pleas of Tioga County
Orphans' Court at No(s):  24 OC 2016

| | | |
|---|---|---|
| IN RE: S.J.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: TIOGA COUNTY | : | |
| DEPARTMENT OF HUMAN SERVICES | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 64 MDA 2017 |

Appeal from the Order Entered December 7, 2016
In the Court of Common Pleas of Tioga County
Orphans' Court at No(s):  24 OC 2016

J-S37018-17, S37019-17, S37020-17

BEFORE:  STABILE, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY MOULTON, J.:                    **FILED SEPTEMBER 20, 2017**

S.C. ("Mother")[1] appeals from the December 2, 2016 order granting the petition filed by the Tioga County Department of Human Services ("DHS") to involuntarily terminate her parental rights to J.S.C. (born in February 2015), pursuant to the Adoption Act, 23 Pa.C.S. § 2511.[2]  Mother also appeals the December 7, 2016 order granting the petition filed by DHS to involuntarily terminate her parental rights to S.J.M. (born in August 2012), whose biological father is L.V.N.[3]  DHS appeals the trial court's December 7, 2016 order denying its petition to terminate the parental rights of L.V.N. to S.J.M.  With respect to all three appeals, we affirm.

The trial court set forth the relevant factual background of the appeal involving J.S.C. as follows:

> 4. Upon discharge from the hospital, [J.S.C.] resided with his mother. . . .
>
>                    . . .

_____

[1] S.C. is also described in the record as S.E.C.

[2] In the December 2, 2016 order, the trial court also granted the petition to involuntarily terminate the parental rights of M.J.G., who is J.S.C.'s biological father.  M.J.G. has not filed an appeal from the termination of his parental rights, nor is he a party to the instant appeal.

[3] We refer to J.S.C. and S.J.M. collectively as "Children".

- 2 -

10. [J.S.C.] was removed from the care of [Mother] on October 27, 2015 and has remained in care since that time.

11. During [J.S.C.'s] placement, the [DHS] Family Services Division has offered services to [Mother] and [M.J.G.].

. . .

13. [Mother] has failed to consistently participate in recommended services.

14. [Mother] has failed to follow through with recommended mental health counseling.

15. [Mother] has been unable or unwilling to maintain consistent housing or employment.

16. [Mother] has been inconsistent in meetings with providers including [Intensive Case Management ("ICM")] and [Support, Teach, and Educate Parents ("STEPs")].

17. [Mother] has continued to struggle with maintaining a safe environment for [J.S.C.].

18. [Mother] has exhibited erratic behavior including, during the pendency of the termination action, threatening self-harm by ingestion of an overdose of prescribed medication.

Trial Court Opinion (J.S.C.), 12/2/16, at 1-2 ("Termination Op. (J.S.C.)").

The trial court set forth the relevant factual background of the appeals involving S.J.M. as follows.

4. Upon discharge from the hospital, [S.J.M.] resided with his mother. . . .

5. [S.J.M.] was removed from [Mother's] care and placed on or about July 29, 2014.

6. Prior to [S.J.M.'s] removal f[ro]m [Mother's] home, [L.V.N.] had no contact with him and was not aware of his status as father until at or near the time of removal.

7. The [DHS] Family Services Division[] has continually offered services to [Mother] and has attempted to offer services to [L.V.N.].

8. [Mother] has failed to follow through with the services offered by [DHS] Family Services Division.

9. [L.V.N.] has accepted some services, but has struggled to maintain his sobriety and has been incarcerated for a substantial portion of [S.J.M.'s] placement.

10. [L.V.N.] also has been forced to deal with a serious medical condition.

11. [L.V.N.] specifically declined to have contact with [S.J.M.] during his period of incarceration.

12. [L.V.N.] also elected not to pursue contact with [S.J.M.] upon his release from his most recent incarceration prior to the filing of the petition.

13. [Mother] has been unwilling to maintain steady housing and employment from the time of placement until after the intent petition was filed.

14. [Mother] has failed to [comply] with treatment recommendations for mental health throughout the placement.

15. [Mother] has been inconsistent in meetings with providers including ICM and STEPs.

16. [Mother] has continued to struggle with maintaining a safe environment for [S.J.M].

17. [Mother] has exhibited erratic behaviors including, during the pendency of the termination action, threatening self-harm by ingestion of an overdose of prescribed medication.

Trial Court Opinion (S.J.M.), 12/7/16, at 1-2 ("Termination Op. (S.J.M.)").

On April 5, 2016, DHS filed the petitions for the involuntary termination of the parental rights to S.J.M. of Mother and L.V.N. pursuant to section 2511(a)(1), (2), (5), (8), and (b). On June 27, 2016, DHS filed the

petitions for the involuntary termination of the parental rights to J.S.C. of Mother and M.J.G., J.S.C.'s biological father, pursuant to section 2511(a)(1), (2), (5), and (b). At the time that DHS filed the petitions, Children resided with D.F. and his wife, J.F., ("the F.'s" or "Foster Parents").

On September 21, 2016, September 22, 2016, and October 26, 2016, the trial court held a hearing on the petitions to terminate the parental rights of Mother and the respective fathers to Children. At the September 21, 2016 hearing, DHS presented the testimony of: its supervisor, Lindsey Hinman, N.T., 9/21/16, at 5, 139; Denise Feger, Ph.D., who is the vice-president of operations for Crossroads Counseling, as an expert in bonding and attachment issues, *id.* at 14; licensed psychologist Joseph McNamara, Ph.D., as an expert in clinical psychology, *id.* at 57-58; Kaleena Allen, who is the extensive case manager through Service Access and Management ("SAM"), *id.* at 65-66; Holly Doud, who took over the case from Ms. Allen at SAM, *id.* at 81; Jessica Becker, the STEPs provider for Tioga County, *id.* at 100; Jamie Hulbert, the STEPs provider for SAM, *id.* at 113, J.F., who is the foster mother and L.V.N.'s first cousin, *id.* at 201, 208. The trial court admitted the dependency records for Children into evidence. *Id.* at 13. On September 21, 2016, L.V.N.'s counsel presented the testimony of L.V.N.'s mother, A.C. *Id.* at 221. Mother's counsel presented the testimony of Carl Linscott, a minister who runs a teen center that Mother attended, *id.* at 253-255, and the testimony of Mother's sister, L.J, *id.* at 267.

On September 22, 2016, Mother presented the testimony of Donna Cummings, who is a family partner for Tioga Early Head Start, which is a home visitor position, N.T., 9/2/16, at 3; Robin Flynn, a family partner at Tioga Early Head Start who works out of the Elkland, Pennsylvania office, *id.* at 28; and Mother's fiancé, T.K., his mother C.K., and his grandfather, T.M, *id.* at 43, 58, 66. In addition, L.V.N. presented the testimony of L.V.N.'s supervisor, N.R., his girlfriend, S.A., and his father, L.V. *Id.* at 73-74, 79, 90.

On October 26, 2016, L.V.N. testified on his own behalf. N.T., 10/26/17, at 3. Mother presented the testimony of D.H., who had resided in Mother's home for a few weeks at the time of the hearing. *id.* at 62, and Mother testified on her own behalf, *id.* at 67.

In the December 2, 2016 order, the trial court terminated the parental rights of Mother to J.S.C. pursuant to section 2511(a)(1), (2), (5), and (b) of the Adoption Act. In the December 7, 2016 orders, the trial court terminated the parental rights of Mother to S.J.M. pursuant to section 2511(a)(1), (2), (5), (8), and (b), and denied the petition to terminate L.V.N.'s parental rights to S.J.M. In both the order terminating Mother's parental rights to S.J.M. and the order denying the petition for termination of L.V.N.'s parental rights regarding S.J.M., the trial court provided that legal custody of S.J.M. would remain with DHS and his placement would remain with Foster Parents, pending further order of court.

On January 4, 2017 and January 6, 2017, Mother timely filed notices of appeal from the termination orders, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On January 5, 2017, DHS timely filed a notice of appeal from the order denying the termination of L.V.N.'s parental rights to S.J.M, along with a concise statement of errors complained of on appeal.[4]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As we discussed in [*In re*] *R.J.T.*, [9 A.3d 1197 (Pa. 2010),] there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other

_____

[4] We will dispose of the appeals in one Memorandum for ease of disposition.

hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (some internal citation omitted).

"In termination cases, the burden is upon [the petitioner] to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003)).

## I.   Mother's Appeal of the Termination of her Parental Rights

In her brief on appeal regarding J.S.C., Mother raises the following issue:

1. The trial court was provided with evidence of a bonding assessment that was performed in regards to the bond between Child and Mother, [L.V.N.], and foster parents, respectively. The assessment and the associated testimony provided clear evidence that there is a bond between Mother and Child and that Mother desires to take care of her children. Did the trial court abuse its discretion

when it determined that terminating the rights of Mother was in the child's best interest, when Mother and Child have the bond that they do?

2. Each service provider who testified at the termination hearing who had worked with Mother in the months approaching the termination hearing acknowledged a marked improvement in both Mother's housekeeping and Mother's parenting ability (two of the primary concerns about Mother in the dependency matter). Mother also got a full-time job in the time preceding the termination hearing (a third concern in the dependency matter). Did the trial court abuse its discretion when it determined that the grounds for termination had been met, or that if they had, that it was in Child's best interest to terminate, when Mother had been making a marked improvement in three areas that had been large concerns?

Mother's Br. (J.S.C.) at 3-4.

In her brief on appeal regarding S.J.M., Mother raises the following issues:

1. The trial court terminated the rights of Mother, while simultaneously determining that Father's [L.V.N.'s] rights should not be terminated. Pennsylvania law repeatedly acknowledges that a Child is entitled to support from two parents. Did the trial court abuse its discretion when it determined that terminating the rights of Mother was in the child's best interest, while Father [L.V.N.] still retains his rights?

2. The trial court was provided with evidence of a bonding assessment that was performed in regards to the bond between Child and Mother, [L.V.N.] and foster parents, respectively. The assessment and the associated testimony provided clear evidence that there is a bond between Mother and Child, that Child is comfortable with Mother, and that Mother desires to take care of her children. Did the trial court abuse its discretion when it determined that terminating the rights of Mother was in the child's best interest, when Mother and Child have the bond that they do?

- 9 -

> 3. Each service provider who testified at the termination hearing who had worked with Mother in the months approaching the termination hearing acknowledged a marked improvement in both Mother's housekeeping and Mother's parenting ability (two of the primary concerns about Mother in the dependency matter). Mother also got a full-time job in the time preceding the termination hearing (a third concern in the dependency matter). Did the trial court abuse its discretion when it determined that the grounds for termination had been met, or that if they had, that it was in Child's best interest to terminate, when Mother had been making a marked improvement in three areas that had been large concerns?

Mother's Br. (S.J.M.) at 3-4.

Preliminarily, we conclude that Mother waived the first issue raised in her brief challenging the termination of her parental rights to S.J.M. (concerning the termination of her parental rights while not terminating L.V.N.'s parental rights) because she did not include it in her 1925(b) statement. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa.Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the Statement of Questions Involved in his brief on appeal).[5]

To affirm the termination of parental rights, this Court need only agree with any one subsection of section 2511(a), along with section 2511(b). *In*

---

[5] Further, even if Mother had preserved this issue, we would conclude it lacks merit. That the trial court determined DHS failed to present clear and convincing evidence to support the termination of L.V.N.'s parental rights does not affect the analysis of whether the trial court properly terminated Mother's parental rights.

*re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We conclude that the trial court in this case properly terminated Mother's parental rights pursuant to sections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To terminate parental rights pursuant to section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for

his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa.Super. 2003).

Regarding the decision to terminate Mother's parental rights to J.S.C. under section 2511(a)(2), the trial court stated the following.

> [J.S.C.] was born [in February 2015] to [Mother]. [J.S.C.'s] father, [M.J.G.], had no involvement with [J.S.C.] since his birth. [J.S.C.] was removed from [Mother's] care on October 27, 2015 and placed in a foster home with [Foster Parents,] where he has remained. Since [J.S.C.'s] removal, the Tioga County Department of Human Services Family Services Division has offered services to the parents. [M.J.G.] has not participated in services and maintained little or no contact with Family Services. [Mother] has remained in contact but struggled as discussed below.

> On June 27, 2016, Family Services filed the . . . Petition for Involuntary Termination of Parental Rights naming both [Mother] and [M.J.G.] as respondents. Family Services specifies subsections (a)(1), (a)(2) and (a)(5) as grounds for termination. Following a consolidated termination hearing occurring over portions of three days, and having considered the closing summations submitted thereafter, the Court determines that Petitioner has established by clear and convincing evidence that the parental rights of both [M.J.G.] and [Mother] as to [J.S.C.] should be terminated.

> . . .

> Since [J.S.C.'s] removal from [Mother's] care, Family Services has offered a variety of supportive services to [Mother], including parenting skills through the STEPs program, Intensive Case Management, support within the home to address safety and health concerns and it has attempted to ensure [Mother] has access to and maintains appropriate mental health services. [Mother] has frequently been unwilling to work with service providers.

- 12 -

She has been argumentative with providers and sometimes unwilling to implement the recommendations she was presented with. On various occasions, [Mother] has declined to cooperate with or even meet with service providers. Family Services has worked to help [Mother] maintain home conditions to safely allow visits in the home, but [Mother] is unwilling or at least unable to maintain safe, appropriate conditions on her own. [Mother] has, prior to the filing of the termination petition, been unable or unwilling to obtain employment. She also has been unable to maintain stable housing. Additionally, [Mother] has been unwilling to maintain necessary mental health services to address her needs. She has been discharged by service providers for failing to attend appointments. The record establishes these difficulties have not occurred due to circumstances beyond [Mother's] control. Dr. McNamara noted [Mother] has substantial cognitive abilities, but needed to follow through with support and mental health services. [Mother] simply failed to do so. The Court finds there is no credible likelihood that [Mother] will remedy the conditions which led to [J.S.C.'s] placement. Rather, in the absence of a termination of [Mother's] parental rights, [J.S.C.] would almost certainly be maintained in placement but denied permanency as [Mother] continues to present superficial cooperation, but no progress toward alleviating the many serious circumstances that prevent her from being a parent to him.

Additionally, the evidence in the case also establishes [Mother's] "repeated and continued incapacity, abuse, neglect or refusal . . ." as [J.S.C.'s] parent causing him "to be without essential parental care, control or subsistence necessary for his physical or mental well-being . . ." as alleged by Petitioner pursuant to §2511(a)(2). [Mother] has been presented with the services discussed above in an effort to address the problems necessitating Family Service and Court Dependency involvement. She has refused to accept and/or adopt the services and remedies offered. There is no evidence to suggest that the incapacity and refusal will be remedied. In fact, the record indicates the contrary and establishes that [Mother] cannot or will not make the necessary changes.

Termination Op. (J.S.C.), 2/2/17, at 2-6.

- 13 -

The trial court provided the following reasoning in support of its decision to terminate Mother's parental rights to S.J.M.

> [S.J.M.] was born [in August 2012] to [Mother]. [L.V.N.], the biological father of [S.J.M.] was unaware of his status as father until [S.J.M.] was approximately one year old, at or about the time he was removed from [Mother's] care. Following the child's removal from [Mother's] home he was placed with [L.V.N.'s] mother, [A.C.], and step-father where he remained for nearly a year until medical concerns in the [C.] family forced [A.C.] to seek a change in [S.J.M.'s] placement[,] at which time he was placed with the [Foster Parents,] who continue to provide placement at this time.
>
> Petitioner asserts subsections (a)(1), (a)(2), (a)(5) and (a)(8) of Title 23 Pa.C.S.A. §2511 as grounds for termination of parental rights. Turning to the parental rights of [Mother], the Court finds Petitioner has established grounds for termination. As noted above, [S.J.M.] was removed from [Mother's] care on October 27, 2015, and the termination petition was filed on June 27, 2016. . . .
>
> Since [S.J.M.'s] removal from [Mother's] care, Family Services has offered a variety of supportive services to [Mother], including parenting skills through the STEPs program, Intensive Case Management, support within the home to address safety and health concerns and it has attempted to ensure [Mother] has access to and maintains appropriate mental health services. [Mother] has frequently been unwilling to work with service providers. She has been argumentative with providers and sometimes unwilling to implement the recommendations she was presented with. On various occasions, [Mother] has declined to cooperate with or even meet with service providers. Family Services has worked to help [Mother] maintain home conditions to safely allow visits in the home, but [Mother] is unwilling or at least unable to maintain safe, appropriate conditions on her own. [Mother] has, prior to the filing of the termination petition, been unable or unwilling to obtain employment. She also has been unable to maintain stable housing. Additionally, [Mother] has been unwilling to maintain necessary mental

- 14 -

health services to address her needs. She has been discharged by service providers for failing to attend appointments. The record establishes these difficulties have not occurred due to circumstances beyond [Mother's] control. Dr. McNamara noted [Mother] has substantial cognitive abilities, but needed to follow through with support and mental health services. [Mother] simply failed to do so. The Court finds there is no credible likelihood that [Mother] will remedy the conditions which led to [S.J.M.'s] placement. Rather, in the absence of a termination of [Mother's] parental rights, [S.J.M.] would almost certainly be maintained in placement but denied permanency as [Mother] continues to present superficial cooperation, but no progress toward alleviating the many serious circumstances that prevent her from being a parent to him.

. . .

Additionally, the evidence in the case also establishes [Mother's] "repeated and continued incapacity, abuse, neglect or refusal . . ." as [S.J.M.'s] parent causing him "to be without essential parental care, control or subsistence necessary for his physical or mental well-being . . ." as alleged by Petitioner pursuant to §2511(a)(2). [Mother] has been presented with the services discussed above in an effort to address the problems necessitating Family Service and Court [d]ependency involvement. She has refused to accept and/or adopt the services and remedies offered. There is no evidence to suggest that the incapacity and refusal will be remedied. In fact, the record indicates the contrary and establishes that [Mother] cannot or will not make the necessary changes.

Termination Op. (S.J.M.), 2/2/17, at 2-5.

As there is competent evidence in the record that supports the trial court's findings and credibility determinations, we conclude the trial court did not abuse its discretion in terminating Mother's parental rights to Children under section 2511(a)(2). *In re Adoption of S.P.*, 47 A.3d at 826-27.

The trial court must also consider how terminating Mother's parental rights would affect the needs and welfare of Children pursuant to 23 Pa.C.S. § 2511(b). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). **See In re Adoption of C.L.G.**, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." **In re K.M.**, 53 A.3d 781, 791 (Pa.Super. 2012). In **In re E.M.**, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. **In re K.M.**, 53 A.3d at 791.

**In re: T.S.M.**, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." **In re Z.P.,** 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa.Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763 (Pa.Super. 2008) (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d 999, 1007 (Pa.Super. 2008) (*en banc*); *accord In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.").

With regard to the termination of Mother's parental rights to J.S.C. under section 2511(b), the trial court stated the following.

> Turning to the considerations contained in §2511(b), it is clear there is a relationship and bond between [J.S.C.] and [Mother]. It is equally clear that [J.S.C.] has bonded with the [F.'s] while placed there. [Mother] has not been able to offer safety, security and stability. After the filing of the termination petition, [Mother] chose to return to counseling and chose to obtain and maintain employment. The evidence establishes her difficulties were the result of circumstances within her control.
>
> Concerning the [F.'s], [J.S.C.] has made significant progress while placed there. [J.S.C.], while in placement, receives Early Intervention and Occupational Therapy services. Mrs. [F.] testified that [J.S.C.] is drastically improving. Mrs. [F.] also testified that she and her family are ready and willing to provide permanency for [J.S.C.] and will adopt him, if given the opportunity.
>
> It is clear there will be difficulty for all parties, most importantly [J.S.C.], if [Mother's] parental rights are terminated. The existing bond will be severed between the two. On balance though, the temporary challenges presently will be outweighed by the advancement of [J.S.C.'s] long-term best interest which will best be served by moving him out of the limbo and into a permanent home where his developmental, physical and emotional needs will be met.

Termination Op. (J.S.C.) at 7.

With regard to the termination of Mother's parental rights to S.J.M. under section 2511(b), the trial court stated as follows.

> Turning to the considerations contained in § 2511(b), it is clear there is a relationship and bond between [S.J.M.] and [Mother]. It is equally clear that [S.J.M.] has bonded with the [F.'s] while placed there. [Mother] has not been able to offer safety, security and stability. After the filing of the termination petition, [Mother] chose to return to counseling and chose to obtain and maintain employment.

The evidence establishes her difficulties were the result of circumstances within her control.

Concerning the [F.'s], [S.J.M.] has made significant progress while placed there. [S.J.M.], while in placement, receives Early Intervention and Occupational Therapy services. Mrs. [F.] testified that [S.J.M.] is drastically improving. Mrs. [F.] also testified that she and her family are ready and willing to provide permanency for [S.J.M.] and will adopt him, if given the opportunity.

It is clear there will be difficulty for all parties, most importantly [S.J.M.], if [Mother's] parental rights are terminated. The existing bond will be severed between the two. On balance though, the temporary challenges presently will be outweighed by the advancement of [S.J.M.'s] long-term best interest[,] which will best be served by moving him out of the limbo and into a permanent home where his developmental, physical and emotional needs will be met.

Termination Op. (S.J.M.) at 6.

We find that there is competent evidence in the record that supports the trial court's findings and credibility determinations, and that there was no abuse of the trial court's discretion in terminating Mother's parental rights to Children under section 2511(b). *See In re Adoption of S.P.*, 47 A.3d at 826-27.

## II. DHS's Appeal of the Denial of the Petition to Terminate L.V.N.'s Parental Rights

Next, we address DHS's issues on appeal. In its brief on appeal regarding S.J.M., DHS raises the following issues:

1. Did the trial court err and abuse its discretion in finding that the grounds for termination of parental rights of father [L.V.N.] under 23 P.S. [sic] § 2511 (a)(1), (a)(2), (a)(5), and (a)(8) were not met in that efforts by the father to remedy the conditions leading to the filing of the

termination petition were first initiated subsequent to the giving of notice of the filing of the petition[?]

2. Did the trial court err and abuse its discretion in determining that the best interest of the child would not be served by terminating the [f]ather's [L.V.N.'s] parental rights[?]

3. Did the trial court err and abuse its discretion in failing to address the impact of severing the sibling bond of S.J.M and his half[-]sibling for whom parental rights were terminated?

DHS's Br. (S.J.M.) at 3.[6]

Here, regarding DHS's petition for the termination of parental rights of L.V.N., the trial court discussed various provisions of 2511(a), but ultimately decided DHS failed to meet its burden under section 2511(b). The trial court stated the following:

> With regard to the parental rights of [L.V.N.], the Court for the following reasons determines that termination of his parental rights at this time is not appropriate.
>
> The evidence presented in this case demonstrates that while [L.V.N.] failed to exercise the appropriate level of parental support and control at times[,] the unique circumstances in this case do not warrant finding that it is in the best interest of [S.J.M.] that [L.V.N.'s] rights be terminated. Specifically, the Court notes [L.V.N.] has undergone periods of incarceration including a term immediately prior to the filing of the petition now before the Court, [L.V.N.] has availed himself to substantial drug and alcohol treatment during the incarceration in significant effort to alleviate the conditions that previously prevented him from being an appropriate parent. The circumstances in [L.V.N.'s] life have at this time

---

[6] DHS stated its issues somewhat differently in its concise statement. We, nevertheless, find the issues sufficiently preserved for our review.

progressed in such a way that it appears reunification in the near future is an attainable goal. [L.V.N.] has demonstrated an adequate ability to maintain his sobriety, employment and appropriate housing. The evidence also demonstrates that he has the necessary parenting skills to provide a safe home for [S.J.M.].

While [L.V.N.'s] contact with [S.J.M.] was limited during the pendency of the dependency case, he did maintain some contact through visits conducted while [S.J.M.] was in his mother's, [A.C.'s,] care. The Court further notes that [S.J.M.] has established and maintained significant contacts with [L.V.N's] family, including but not limited to the child's grandmother and grandfather. Severing all bonds with the [L.V.N.'s] family is not in his best interest.

Termination Op. (S.J.M.), 2/2/17, at 6-7.

We find that there is competent evidence in the record that supports the trial court's findings and credibility determinations, and that there was no abuse of the trial court's discretion in ruling that L.V.N.'s parental rights to S.J.M. should not be terminated under section 2511(b) at this time under the individual circumstances of this case. *See In re Adoption of S.P.*, 47 A.3d at 826-27, 830-31 (discussing the abuse of discretion standard and citing *In re R.J.T.*); *see also In re Adoption of: A.C.*, 2017 Pa. Super 143 (May 12, 2017) (affirming trial court order denying the agency's petition for the termination of the father's parental rights where finding that CYS did not

establish by clear and convincing evidence that Father's rights should be terminated under section 2511(a)(1) was supported by record).[7]

Finally, we address DHS's contention that the trial court abused its discretion by separating S.J.M. from his half-sibling, J.S.C., through its refusal to terminate L.V.N.'s parental rights so that both Children may be adopted by Foster Parents.

In its Rule 1925(a) opinion, the trial court explained: "focusing exclusively upon [the relationship between S.J.M. and J.S.C.], would compel the abandonment of consideration of any other bonds including the child's bond to another half sibling fathered by [L.V.N.]." Trial Court Opinion Pursuant to Pa.R.A.P. 2511(a)(2)(ii) at 1.

In *In re R.N.J.*, the trial court terminated the parental rights of the mother to two of her children, even though the children to whom her parental rights had been terminated shared a foster home with a child as to

_____

[7] As both the statute and our case law make clear, the focus under section 2511(b) is on the child. *See In re Adoption of C.L.G.*, 956 A.2d at 1008. We note that much of the trial court's discussion focuses on Father's conduct. That discussion is appropriate under 2511(b) to the extent that Father's conduct is relevant to the best interests of Child. The trial court relied on the unique nature of this case and the relationship that Child has with Father's family, as well as the steps Father has taken to make reunification an attainable goal, and determined that it would not be in Child's best interest to terminate Father's parental rights. While a more extended discussion of Child's interests might have been preferable, we will not second guess the trial court, who observed the parties and whose decision is not the result of "manifest unreasonable, partiality, prejudice, bias, or ill-will." *See In re Adoption of S.P.*, 47 A.3d at 826-27."

whom her parental rights had not been terminated. 985 A.2d 273 (Pa.Super. 2009). This Court held that the trial court had not abused its discretion in concluding that the termination of the mother's parental rights to the two children would best serve the children's developmental, physical and emotional needs and welfare, and that the termination of the mother's parental rights was proper. *Id.* at 279. We reasoned:

> The trial court considered each child's situation independently. It found that the children's unique emotional needs and their respective relationships with Mother compelled DHS to tailor individualized permanency goals that best served each child's needs and welfare. As the record supports the trial court's determination, we will not disturb it.

*Id.* at 280.

Here, we have determined that the trial court did not abuse its discretion in concluding that the termination of the parental rights of Mother and M.J.G. served J.S.C.'s best interests, and that the termination of L.V.N.'s parental rights does not serve S.J.M.'s best interests. We have no reason to disturb that determination on the basis that J.S.C. may now be adopted by Foster Parents, and S.J.M. may not be adopted by them at this time.[8] Finding no abuse of the trial court's discretion, we affirm the trial court's orders.

---

[8] In fact, the trial court's order denying DHS's termination petition as to L.V.N. directs that S.J.M. will remain with Foster Parents until further order of court.

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/20/2017